IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

TAMMY H.,[1]

              Plaintiff,

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

_____

Case No. 3:23-cv-00057-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

Plaintiff Tammy H. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is

based on proper legal standards and the findings are supported by substantial evidence in the

record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation

omitted). The court must weigh "both the evidence that supports and detracts from the

[Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where

the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its]

judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation

omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court

"must uphold the ALJ's decision where the evidence is susceptible to more than one rational

interpretation"). "[A] reviewing court must consider the entire record as a whole and may not

affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d

625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on multiple sclerosis ("MS"), neuropathy, limited

mobility, chronic pain, and fatigue. Tr. 75.[2] At the time of her alleged onset date, she was 51

years old. Tr. 74. She has completed high school. Tr. 31. She has past relevant work as a

customer complaint clerk, general clerk, and personnel clerk. *Id.*

Plaintiff protectively applied for DIB on August 14, 2020, alleging an onset date of July

3, 2020. Tr. 74. Her application was denied initially on March 11, 2021, and on reconsideration

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 10).

on October 5, 2021. Tr. 74-93, 95-103. Plaintiff subsequently requested a hearing, which was held on March 2, 2022, before Administrative Law Judge ("ALJ") Sue Leise. Tr. 39. Plaintiff appeared and testified at the hearing, represented by counsel Tr. 41-73. A vocational expert ("VE"), Frank Lucas, also testified. Tr. 65-73. On April 11, 2022, the ALJ issued a decision denying plaintiff's claim. Tr. 33. Plaintiff requested Appeals Council review, which was denied on June 30, 2022. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 3)

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c).
If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one
of a number of listed impairments that the [Commissioner] acknowledges are so severe as to
preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the
claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at
141. At this point, the Commissioner must evaluate medical and other relevant evidence to
determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related
activities that the claimant may still perform on a regular and continuing basis, despite any
limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past
relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant
can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the
Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other
work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§
404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not
disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful
activity after her alleged onset date through the date of the ALJ's decision. Tr. 17.

At step two, the ALJ determined that plaintiff has the following severe impairments: MS, attention deficit hyperactivity disorder ("ADHD"), mild neurocognitive disorder, and anxiety disorder. Tr. 18.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* The ALJ then resolved that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work, with the following limitations:

> She can lift/carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk two hours in an eight-hour workday, and sit for at least six hours in an eight-hour workday. She can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. She can occasionally balance and frequently stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extremes of cold or heat and have no exposure to hazards such as unprotected heights or dangerous machinery. She is able to remember, understand, and carry out routine, repetitive tasks or instructions that can be learned within a period of 30 days or by demonstration, make simple work-related decisions, and sustain few if any workplace changes.

Tr. 20.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 31.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as an electronics worker, assembler of small products, and hand finisher. Tr. 32. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 33.

## DISCUSSION

Plaintiff argues that the ALJ failed to account for all of her limitations when forming both her physical and mental RFC. Regarding her physical impairments, plaintiff asserts that the ALJ failed to establish an RFC that captured plaintiff's limitations caused by her episodes of dizziness

and imbalance. Pl.'s Opening Br. 3. As to her mental impairments, plaintiff argues that the ALJ improperly weighed medical opinion evidence that suggested plaintiff is limited to performing one to two-step tasks and instructions. *Id.* at 10. For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

## I.    Standards

The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. §§ 404.1545, 404.1545; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

## II.    Physical RFC

Plaintiff argues that her physical RFC is not supported by all the relevant evidence because (1) the ALJ failed to formulate an RFC that included her limitations caused by episodes of dizziness and imbalance, and (2) the RFC finding runs contrary to SSR 96-8p because the ALJ did not articulate how plaintiff can stand/walk for two hours a day and lift twenty pounds regularly, as opposed to working in a sedentary job and lifting less weight. Pl.'s Opening Br. 3-10. This court finds both arguments unpersuasive.

First, in arguing that the ALJ failed to formulate an RFC that accounted for plaintiff's episodes of dizziness and imbalance, plaintiff asserts that these limitations prevent her from being able to stand or walk for two hours in an eight-hour day and lift twenty pounds. *Id.* at 3.

Plaintiff further explains that "the ALJ overlooked patent inconsistencies in having an individual standing/walking for two hours each day while lifting and carrying up to twenty pounds…" given that plaintiff "…has the propensity to become dizzy and lose their balance during these activities." *Id.* at 5-6.

The ALJ's analysis of plaintiff's imbalance and dizziness symptoms was thorough and supported by substantial evidence. Plaintiff testified that due to her MS, her balance is off at times requiring her to be careful when walking. Tr. 54. She explained that these symptoms cause her to trip and bump into things, and severely restrict her exertional capacity. *Id.* However, the ALJ explicitly acknowledged plaintiff's imbalance and dizziness symptoms and stated that "although dizziness is not a medically determinable impairment, it is a symptom that has been present throughout the period at issue, and plaintiff has shown some signs of abnormal gait." Tr. 18 (citing Tr. 558). The ALJ then provided a three-page narrative discussion of the evidence pertaining to plaintiff's reports of dizziness and imbalance in conjunction with her MS symptoms. Tr. 22-25.

In the narrative discussion, the ALJ discussed plaintiff's visit with Dr. Zarelli in June 2021, where she complained of dizziness and imbalance symptoms that she had been having since 2015. Tr. 23 (citing Tr. 555). The ALJ acknowledged Dr. Zarelli's statement that plaintiff's symptoms were consistent with cervical vertigo secondary to muscle spasms, and that she could be treated with clonazepam. Tr. 23 (citing Tr. 558-59). The ALJ cited a subsequent visit with a different neurologist, where plaintiff reported that clonazepam did not help, and the neurologist stated that there was nothing more he could offer. Tr. 23 (citing Tr. 560). The ALJ stated that the record does not reflect further medical visits for MS symptoms or dizziness, except for the consultative examination in September 2021 in connection with her disability claim. Tr. 24. The

ALJ discussed how during this consultative examination, plaintiff reported a history of dizziness and that she had difficulty walking on her heels, but otherwise demonstrated normal gait, motor strength, sensation, and overall, her exam was "grossly normal." Tr. 24 (citing Tr. 466-472).

The ALJ also discussed that despite plaintiff's longstanding physical symptoms, she was still able to work "full-time for the same employer for several years prior to her alleged onset date." Tr. 24. The ALJ explained that the record does not show new concerns or changes in her conditions and symptoms after she stopped working. *Id.* The ALJ specifically cited to another visit with Dr. Zarelli where she followed up for monitoring of her condition. Tr. 24. At this visit, Dr. Zarelli assessed plaintiff's MS as stable without significant progression since 2016, and that there was no need for further treatment given that she had "virtually no new lesions in five years." Tr. 24, 549, 558. Dr. Zarelli also concluded that "given how long she has had MS and never been treated, she appears to have a very benign case." Tr. 543.

Second, plaintiff argues that the ALJ failed to follow SSR 96-8p by providing no explanation as to why the RFC limited plaintiff to lifting twenty pounds frequently, as opposed to ten pounds or less. Pl.'s Opening Br. 8. Similarly, plaintiff argues that the ALJ provided no explanation as to why she is able to stand or walk for two hours as opposed to being limited further to sedentary work. *Id.*

The requirements of SSR 96-8p are not as strict as plaintiff argues and do not require the ALJ to provide the level of detail plaintiff asserts is necessary. SSR 96-8p requires the RFC assessment to include a narrative discussion describing how the evidence supports each conclusion. SSR 96-8p. The RFC assessment must include a discussion of why the reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. SSR 96-8p does not require an ALJ to

thoroughly explain why they chose one limitation over another, for example, why they chose to limit a claimant to lifting twenty pounds, verses ten pounds, fifteen pounds, and so on.

The ALJ was thorough in the RFC analysis and gave plaintiff the benefit of the doubt and limited her to an RFC more restrictive than what was advised by the medical opinions. The ALJ discussed how the medical opinions restricted her to medium work, but that based on plaintiff's subjective reports of dizziness and fatigue, she should be further restricted to a range of light, rather than medium work. Tr. 28. Particularly, the ALJ discussed how Dr. Sethi opined that plaintiff has no limitations of standing or walking, and that she can lift 30-40 pounds occasionally, however, the ALJ stated that "considering documented dizziness and fatigue symptoms with intermittent signs of slight imbalance, I find that [plaintiff] could not sustain medium-exertion work or standing/walking more than two hours per day on a regular and continuing basis." *Id.*

It is clear that the ALJ was thorough in her analysis of plaintiff's physical symptoms and formulating an RFC appropriately accounts for her limitations.

### III.    Mental RFC

Plaintiff next asserts that the ALJ did not include all her impairments when formulating her mental RFC. Pl.'s Opening Br. 11. Specifically, plaintiff argues that the ALJ should have included the agency psychological consultant's opined limitation that plaintiff has "uncontroverted difficulties that restrict her ability to carry out more than one to two-step tasks." *Id.* Plaintiff further contends that this issue is significant because the jobs identified by the VE require four to five steps, and the VE confirmed that a limitation of just one to two-step

instructions would be inconsistent with the jobs identified and competitive employment.[4] Pl.'s Opening Br. 11 (citing Tr. 70, 72).

Dr. Michael Brown, an agency psychological consultant, reviewed the record on behalf of the agency and completed plaintiff's mental residual functional capacity assessment. Tr. 83-90. Dr. Brown opined plaintiff could perform and maintain concentration for simple one to two-step tasks. Tr. 89. Dr. John Wolfe, an agency psychological consultant, made a similar but simpler finding at the reconsideration level. Tr. 102. Dr. Wolfe indicated that plaintiff could perform simple, one to two-step instructions, and remain on task within normal tolerances despite intermittent interruptions from her psychological symptoms. Tr. 28 (citing Tr. 101-102).

The ALJ determined that both Dr. Brown and Dr. Wolf's opinions were not persuasive. Tr. 28. The ALJ explained that the record does not support restricting plaintiff to only one to two-step tasks. *Id.* The ALJ pointed to consultative examination findings from February 2021, where examiners noted that plaintiff "appeared to give suboptimal effort." Tr. 28, 456. The ALJ also cited the reconsideration assessment where Dr. Wolfe specifically noted that he was giving plaintiff the "benefit of the doubt" in the assessment, suggesting that he was aware that the limitations were not fully supported. Tr. 28 (citing Tr. 98). The ALJ mentioned that plaintiff endorsed being independently able to care for her personal needs, shop, and perform low-exertion household tasks, which inherently require more than one or two steps. Tr. 20, 29 (citing 276-90, 451-57, 473-77). Accordingly, there was substantial evidence to support the ALJ's

---

[4] Being limited to one to two-step tasks does not generally rule out competitive employment. The VE in this case stated that he never looks at jobs as only requiring one to two steps because in his opinion, all jobs require more than a one or two step process. Tr. 70. The VE explained that plaintiff could still perform the jobs identified as they require no more than four or five steps. The VE explained that the jobs identified are remote and routine, meaning, plaintiff would be doing the same thing repeatedly. *Id.*

conclusion that Dr. Brown and Dr. Wolfe's opinions were inconsistent with the other evidence in the record, and the ALJ did not err in concluding that they were unpersuasive.

The ALJ also determined that Dr. Gregory Allen May, the consultative psychological examiner's opinion, was not persuasive. Tr. 29. Dr. May opined that plaintiff has "significant deficits" as to understanding, carrying out, and remembering both complex and simple two-step instructions. Tr. 456. The ALJ reasoned that this opinion was unpersuasive and inconsistent, because despite this limitation, Dr. May also opined that plaintiff could manage her funds independently which is inherently not a simple two-step task. Tr. 29 (citing Tr. 456). The ALJ also discussed how this opined limitation is out of proportion to the exam findings. Tr. 29. Specifically, the ALJ cited how plaintiff had low performance on objective cognitive testing, however, Dr. May noted, "scores should be interpreted with caution and likely underestimate her actual memory capacity." Tr. 29 (citing Tr. 456). The ALJ also discussed how plaintiff showed adequate attention for the more general mental status exam tasks, and that Dr. May advised that, "taken collectively, her mental status is reflective of normal functioning and any errors made are considered minor." Tr. 29 (citing Tr. 454). The ALJ also mentioned that despite Dr. May's advice that plaintiff would benefit from therapy focused on adapting to her memory function level, the record demonstrates that plaintiff did not engage in cognitive therapy. Tr. 29. The ALJ even considered how plaintiff's anxiety exacerbates her poor memory but concluded that plaintiff took minimal efforts in addressing her depression and anxiety symptoms as well. *Id.*

Accordingly, there was substantial evidence to support the ALJ's conclusion that Dr. May's opinion was inconsistent with the other evidence in the record, and the ALJ did not err in concluding that plaintiff should not be limited to one to two-step tasks.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court

AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 26th day of January, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge